[Cite as *State v. Thurman*, 2026-Ohio-1811.]

STATE OF OHIO         )             IN THE COURT OF APPEALS
                           )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

STATE OF OHIO                        C.A. No.     25CA012309

     Appellant

     v.                              APPEAL FROM JUDGMENT
                                      ENTERED IN THE
ALICE THURMAN                  OBERLIN MUNICIPAL COURT
                                      COUNTY OF LORAIN, OHIO
     Appellee                   CASE No.    25 TRC 00788

DECISION AND JOURNAL ENTRY

Dated: May 18, 2026

---

CARR, Presiding Judge.

{**¶1**}    Appellant, the State of Ohio, appeals the judgment of the Oberlin Municipal Court. This Court affirms.

I.

{**¶2**}    This matter arises out of a traffic stop that occurred in Amherst during the early morning hours of April 20, 2025. An Amherst police officer initiated a stop of Alice Thurman's vehicle shortly after she turned onto State Route 2. As a result of the stop, during which the officer administered field sobriety tests, Thurman was charged with one count of operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), and one count of failure to obey a traffic control device in violation of Amherst Cod. Ord. 313.01. Thurman pleaded not guilty to the charges at arraignment.

{¶3} Thurman filed a motion to suppress arguing, among other things, that police did not have a lawful basis to administer field sobriety tests during the stop. After a hearing, the trial court issued a journal entry granting the motion to suppress.

{¶4} The State filed a timely notice of appeal. Now before this Court, the State raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT IMPROPERLY GRANTED DEFENDANT-APPELLEE'S MOTION TO SUPPRESS, FINDING SERGEANT WARYU DID NOT HAVE THE REASONABLE SUSPICION OF SEPARATE ILLEGAL ACTIVITY REQUIRED FOR DETENTION TO ADMINISTER FIELD SOBRIETY TESTING.

{¶5} In its sole assignment of error, the State contends that the trial court erroneously granted the motion to suppress. This Court disagrees.

{¶6} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997).

{¶7} A law enforcement officer must have a reasonable suspicion of criminal activity in order to conduct field sobriety tests. *State v. Todd*, 2020-Ohio-963, ¶ 8 (9th Dist.), citing *State v.*

*Simin*, 2012-Ohio-4389, ¶ 12 (9th Dist.). "Reasonable suspicion requires that an officer be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." (Internal citations and quotations omitted.) *State v. Davenport*, 2012-Ohio-4427, ¶ 6 (9th Dist.). A court must consider the totality of the circumstances in determining whether reasonable suspicion exists. *State v. Panero*, 2018-Ohio-1005, ¶ 18 (9th Dist.).

Discussion

**{¶8}** Thurman filed a motion to suppress raising an array of issues, including whether there was a lawful basis to prolong Thurman's detention to administer field sobriety tests, and, further, whether there was probable cause to place Thurman under arrest. The matter proceeded to a hearing on July 17, 2025. The only witness to testify at the hearing was Sergeant Waryu, who initiated the traffic stop. The State also presented a number of exhibits, including Sergeant Waryu's body camera video.

**{¶9}** After the hearing, the trial court issued an order granting the motion to suppress on the basis that the totality of the circumstances did not support Officer Waryu's continued detention of Thurman. The trial court set forth the following factual findings in support of this conclusion:

> [] Defendant was coming from a tavern and had been to a 50th birthday party prior to that. [] Defendant drove through a red signal making a right turn without stopping onto an entrance ramp to State Route 2. [] Defendant stopped immediately after the officer activated his lights. [] Defendant acted as if she did not realize she went through the red signal without stopping but the court does not believe from watching the video that she could not remember but was making an excuse. [] Defendant immediately showed the officer her husband's "badge[.]" It appeared to the court that she thought she might be given a break for running the red signal. [] Although initially denying drinking, after being asked to exit the vehicle, Defendant admitted to having consumed [alcohol] at the birthday party but at least 2 hours ago but "nothing ridiculous[.]" [] The officer did not observe red eyes, however testified that the defendant's eyes were "glassy" or "glossy[.]" [] The officer did not detect any odor of alcohol. [] The officer did not detect any slurred speech.

[] The officer did not detect any balance problems while the defendant exited the vehicle and walked outside the vehicle. Defendant was wearing high heeled shoes and still had no problems with balance which was supported by the video . . .[1]

{¶10} The trial court ultimately determined that Sergeant Waryu's decision to administer the field sobriety tests resulted primarily from an overreaction to Thurman presenting her husband's badge, which the trial court recognized as inappropriate. The trial court observed that Sergeant Waryu was placed in an unenviable position when Thurman presented the badge, given that the use of "courtesy cards" creates the appearance of a double standard in the justice system. With respect to the evidence presented at the hearing, however, the trial court determined that the State failed to demonstrate that Officer Waryu had a reasonable suspicion of impairment to administer the field sobriety tests.

{¶11} On appeal, the State contends that there was reasonable suspicion to administer the field sobriety tests under the facts of this case.

{¶12} At the outset of our discussion, we note that the State has not challenged the trial court's findings of fact and instead argues only that the trial court reached an erroneous legal conclusion with respect to whether there was a basis to administer the field sobriety tests. *See Burnside*, 2003-Ohio-5327, at ¶ 8 ("Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.").

{¶13} Under these circumstances, we cannot say that the State's assignment of error has merit. Sergeant Waryu initiated the stop of Thurman's vehicle after she made a right turn at a red light without coming to a complete stop. Thurman was coming from a tavern and she stated that

---

[1] The trial court set forth additional findings pertaining to the results of the field sobriety tests.

she did not realize that she had driven through a red light, although the trial court found that Thurman was simply making an excuse regarding the red light. Sergeant Waryu had not observed any other signs of impairment at the time he asked Thurman to exit the vehicle to administer the field sobriety tests. On the body camera video, Sergeant Waryu can be heard telling another officer, "I am going to ask her to step out just to talk with her and see if I pick up on anything." Sergeant Waryu can also be heard telling the other officer that Thurman had presented her husband's badge. When determining whether reasonable suspicion existed to administer field sobriety tests, courts should consider the facts available to the officer at the moment he or she decided to administer the tests. *State v. Lopez*, 2024-Ohio-2394, ¶ 34 (7th Dist.). Here, the facts available to Sergeant Waryu at the time he administered the field sobriety tests did not give rise to a reasonable suspicion of impairment. It follows that the State's assignment of error is without merit.

{¶14} The State's assignment of error is overruled.

III.

{¶15} The State's assignment of error is overruled. The judgment of the Oberlin Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Oberlin Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

DONNA J. CARR
FOR THE COURT

 

HENSAL, J.
CONCURS.

FLAGG LANZINGER, J.
DISSENTING.

{¶16} I respectfully dissent from the majority opinion because I would reverse the decision of the trial court on the basis that Sergeant Waryu had reasonable suspicion to administer the field sobriety tests.

{¶17} "Reasonable suspicion is based on the totality of the circumstances." *State v. Ghouche*, 2020-Ohio-3311, ¶ 9 (9th Dist.). As this Court has observed, "no single factor is dispositive of whether a law enforcement officer is legally justified in conducting field sobriety tests in any given case." *Id.*, quoting *State v. Hall*, 2016-Ohio-5787, ¶ 26 (5th Dist.).

{¶18} Here, Sergeant Waryu initiated a traffic stop around 1:30 a.m. Upon being pulled over, Ms. Thurman immediately presented Sergeant Waryu with her husband's "badge." Ms. Thurman also "acted as if she did not realize she went through the red signal without stopping[,]"

which the trial court interpreted as a disingenuous excuse for failing to stop. Ms. Thurman told Sergeant Waryu she was coming from a birthday party at a tavern, but initially denied drinking that evening. Ms. Thurman later admitted she consumed alcohol, claiming she did so at least two hours prior to the traffic stop. Sergeant Waryu indicated he did not detect slurred speech or the odor of alcohol, but he described Ms. Thurman's eyes as "glassy" or "glossy[.]"

{¶19} Under these facts, along with the rational inferences from these facts, I would conclude Sergeant Waryu had reasonable suspicion to administer the field sobriety tests. *See Ghouche* at ¶ 9, quoting *State v. Buchanan*, 2014-Ohio-3282, ¶ 8 (9th Dist.) ("Reasonable suspicion requires that the officer 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"). Consequently, I would reverse the decision of the trial court. For these reasons, I respectfully dissent.

APPEARANCES:

PATRICK M. WARD, Prosecuting Attorney, for Appellant.

MICHAEL STEPANIK and AMANDA TILTON, Attorneys at Law, for Appellee.